(No. 4540-)

LUCILLE J. MILLER, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 29, 1954.*

DANIEL F. ZAHN, Attorney for Claimant.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

FEARER, J.

On May 19, 1953, an amended complaint was filed by claimant against the State of Illinois for property damage to her automobile and personal injuries in a total amount of $732.37.

Respondent failed to plead to the amended complaint. Therefore, Rule 11 of this Court is applicable, and it is, therefore, considered that a general denial of the facts set forth in the amended complaint was filed.

The Commissioner filed his Report on February 4, 1954, and on the same day filed a note of explanation, wherein it was called to the Court's attention for the first time that the amended complaint was insufficient in that it did not contain allegations to the effect that claimant was the only person interested in the claim, and that no assignment or transfer of the claim, or any part thereof or interest therein, had been made, as required by Chap. 37, Sec. 439.11, Ill. Rev. Stats., nor does the amended complaint comply with Rule 5 (b) of the Rules of the Court of Claims, as claimant in her complaint did not satisfy the requisites of petition, as pre-

scribed by Statute and Rules of the Court of Claims, contending that this question would be jurisdictional.

The action is predicated upon an accident, which occurred on November 17, 1952. On page 32 of the transcript claimant testified that she had not released or given a covenant, and had not received any payment on account of property damage or personal injuries. Under the circumstances, we are ordering a delay in the entry of this opinion until November 18, 1954, or until an amendment to the amended complaint is filed, complying with the Statute and Rules of this Court hereinabove referred to.

The evidence in this case establishes that on November 17, 1952, at or about the hour of 1:00 P. M., claimant owned a 1949 Pontiac Tudor Sedan, which was being driven by her son, William H. Miller, in an easterly direction on U.S. Route No. 40, approximately three miles east of Marshall, Illinois, and at said time and place claimant was riding in the rear seat of the automobile. The State of Illinois on said date spread on the east bound traffic lane a light film of oil with a paraffin base for the protection of the highway. The time at which the work was done does not clearly appear in the record.

It is clearly established that the accident occurred on a decline, which was approximately 250 to 300 feet from the top of the grade to the bottom. Claimant's son was driving between 50 to 55 miles an hour, and was traveling from 100 to 150 feet behind an automobile owned and driven by Mr. Leon Best of Robinson, Illinois, who in turn was following an automobile driven by a Mr. Odlinger. As claimant's son started to descend the hill on the south side of the highway, he noticed a car ahead of him zigzag down the highway, as though it was out

of control. The testimony disclosed that the Odlinger car had first gone out of control, as it proceeded the Best automobile. When claimant's son noticed the two cars were out of control, he applied his brakes, but it, too, went out of control, and all three cars came together near the bottom of the hill. Claimant's car was in the middle between the Odlinger and the Best cars, and was facing in a northeasterly direction. All three automobiles were considerably damaged. This testimony is established by claimant, her son, and the drivers of the other two cars, all of whom testified that, upon alighting from their cars, they found the highway to be in a slippery condition, which had not been apparent to them. This was due to the fact that a light film of oil had been spread upon the highway, which was slightly darker than the color of the concrete pavement. Their testimony is further corroborated by Howard C. Reynolds, a state policeman, who was called to the scene of the accident. His car also skidded on the slippery pavement.

As to the question of negligence in warning traffic traveling in an easterly direction within this short stretch of road, which was approximately 300 feet in length, claimant, her son, the police officer, and Mr. Best all testified that there were no cautionary signs, highway trucks or State Highway employees to call their attention to the hazardous condition of the road, because of the oil treatment; nor did they at any place on this highway encounter a like condition, which would have warned them that state employees were working on the highway, and that such work created a hazardous condition. The testimony that the substance in question would dry within a period of two hours when the humidity was low and no moisture formed on the concrete was further substantiated by the Departmental Report.

The evidence disclosed that it was a bright, sunshiny day, and the temperature was approximately 70°, but the record is silent, and there is no explanation made by respondent, as to when the substance was applied.

The only evidence offered by respondent was the Departmental Report, and the testimony of an employee of the state by the name of Howard Jackson, who was on said date employed by the Maintenance Division of the State Highway Department. He testified that the scene of the accident was within his territory, but that the application of the oil solvent was made by the Day Labor Department, which has its headquarters in Springfield, and that the Maintenance Supervisor furnished men to assist in doing this work. He testified the solvent was spread on one lane of traffic at a time, which left the other lane open for traffic, which was the fact in this case. He further testified a flagman was used at each end of the particular area being treated for the protection of traffic, and signs bearing inscriptions "Road Repairs Ahead" and "One Way Traffic" were placed on the shoulders to each of the already treated areas. The material parts of the Departmental Report do not throw too much light on the situation.

Claimant, her seventeen and a half year old son, who was driving, Mr. Best, whose car was ahead of claimant's car, and the highway policeman testified that this was the only area from Marshall to the scene of the accident wherein a solvent was spread on the road. They further testified that there were no warning signs, such as "One Way Traffic", "Road Repairs Ahead", or any other cautionary signs, which would have warned traffic traveling in the east bound traffic lane that, because of the application of the solvent on the road, it was in a hazardous or dangerous condition, which would

necessitate traffic to proceed at a slower speed, and which would have protected motorists traveling upon said stretch of highway.

There was no evidence that a flagman had been placed at either end of the area where the work was in progress, other than that, after the accident occurred, a flagman was sent to the top of the hill to warn traffic of the hazardous condition, and of the wrecked cars on the highway. The highway officer, who arrived at the scene of the accident sometime thereafter, said that the cars had been moved onto the shoulder, and that the flagman was not actively engaged in warning traffic; and, furthermore, that his car skidded in the same area.

Extensive briefs were filed by both respondent and claimant's attorney pertaining to questions of negligence, contributory negligence, proximate cause and burden of proof. Cases were cited from the Illinois Supreme Court Reports, Appellate Court Reports, and former decisions of this Court. We do not believe it necessary to discuss the authorities cited, as this case can be decided on purely questions of fact. Three questions are present in this case, namely, (1) Was claimant, or her son, and particularly claimant, guilty of contributory negligence; (2) Was the State of Illinois guilty of negligence in failing to warn motorists traveling upon the highway of the repair work, and of the oil substance or solvent present on the highway, which would make traveling upon that particular portion of the highway hazardous; and, (3) What damages were sustained.

We believe that claimant has proven by a preponderance or greater weight of the evidence that she was free from any contributory negligence, and that her son, the driver of the car, was not guilty of negligence in the operation of the car just prior thereto and at the

time of the accident. We further believe that claimant has proven by a preponderance of the evidence that it was the negligence of the agents of respondent in failing to warn traffic in this particular area of the hazardous condition of the highway, which was the proximate cause of the accident in question. We further believe that claimant suffered damages, which we will hereinafter discuss. We express this opinion based upon the evidence in this case, being cognizant of the fact that the State of Illinois is not an insurer of the safety of all persons traveling upon its highways. However, it is the duty of the agents, officers and servants of the State of Illinois to warn motorists of any hazardous condition, which would not be apparent to them while driving.

We must also take into consideration that it is the law of this state that a person confronted with a sudden danger is only required to exercise ordinary care, which would be used by an ordinarily careful person, taking such danger, if any, into consideration.

We do not believe it necessary to discuss at length the question of damages. Claimant is asking first for refund of monies expended for the towing and the repairing of her car, as well as telephone and transportation expenses, which were incurred as the result of the damages to her automobile. The testimony of claimant and the exhibits reveal that the cost of the repairs to her car was in the sum of $554.67; transportation costs, $48.88; telephone bills, $15.70, making a total for property damage and incidental expenses of $619.45. As to personal injuries, claimant testified that she had had a former injury to her back in the sacroiliac region, and that the jarring and resulting fall to the floor, when the accident occurred, aggravated the disc injury, so that she was unable to work for four days, and was troubled

by her back until May of 1953. There was no medical testimony offered, nor have any examinations been made, or did anyone testify as to the former injury, its seriousness, and whether or not there was any aggravation. Due to the fact that claimant was a supervisor of nurses in a hospital in Cleveland, Ohio, where she lived, she said she did not have any doctor bills. However, she testified to the purchase of medicines in the amount of $28.80. We are unable to determine from the record, other than self-serving declarations, anything in regard to the back injury, or the necessity for the purchase of medicines, and also the loss of wages for four days.

We are, therefore, declining the award for personal injuries, and are limiting the award to property damage and incidental expenses, i.e., telephone bills, transportation to Cleveland, Ohio, and transportation necessitated in having the automobile repaired, which is a total claim in the amount of $619.45.

We, therefore, enter a total award to claimant, Lucille J. Miller, in the amount of $619.45.